Filed 9/12/13  Chokatos v. Magnate Fund # 1 CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JOHN N. CHOKATOS,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>MAGNATE FUND #1 LLC et al.,<br><br>    Defendants and Respondents. | A137174<br><br>(City & County of San Francisco Super. Ct. No. CGC 10-500839) |
| GIANCARLO MARANGHI,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>MAGNATE FUND #1 LLC et al.,<br><br>    Defendants and Respondents. | A137187<br><br>(City & County of San Francisco Super. Ct. No. CGC 09-487944) |

Plaintiffs John N. Chokatos and Giancarlo Maranghi appeal judgments of dismissal in favor of several defendants following orders sustaining without leave to amend demurrers to plaintiffs' third amended complaints for fraud (complaints). We consolidated the appeals for review.

Plaintiffs allege individuals and related corporations conspired to operate a "Ponzi scheme" in which money was borrowed from plaintiffs with false promises that the loans were secured by deeds of trust. We conclude the court rightly sustained demurrers brought by several limited liability companies because plaintiffs failed to allege adequately facts that support the alter ego or single enterprise doctrine under which

plaintiffs seek to hold the affiliated companies responsible for the acts of other companies. The deficiency may be cured, however, and we thus conclude that the court erred in denying plaintiffs leave to amend their pleadings.

## BACKGROUND

Plaintiffs allege that defendant Benny Chetcuti, Jr., represented himself as an experienced real estate developer offering safe investment opportunities in his projects when, in fact, he was operating a Ponzi scheme with John Simonse and their related companies.

According to plaintiffs' complaints, Chetcuti and his company Chetcuti & Associates, Inc. (collectively, Chetcuti) "borrowed money from his victims, usually short term loans, with the promise of high . . . returns." Chetcuti signed promissory notes and issued deeds of trust to properties owned by himself or "other entities" to secure the loans. Before recording the lenders' deeds of trust, Chetcuti issued and recorded deeds of trust in favor of Simonse and related entities on unfunded sham loans "that would totally encumber the property." "Simonse and his other entities would then foreclose on the properties, leaving the victims without any security for their loans, and defendant Simonse and his entities would have free and clear title to the properties, without actually making any loans. Defendant Simonse would then create new entities, and transfer title of the foreclosed properties to the newly created entities, without any consideration, to make the properties even more removed and difficult for the creditors and victims of defendant Chetcuti to recover the security for their loans." "When defendant Chetcuti could not find enough investors to pay for various other loans, the scheme collapsed, leaving his victims with unpaid promissory notes with no security for their loans." Chetcuti filed for bankruptcy. According to plaintiff Chokatos, Chetcuti perpetrated fraud upon at least 114 victims who suffered an aggregate loss of $28 million or more.

Plaintiff Maranghi loaned Chetcuti $250,000 secured by a lien in the form of a trust deed on a Woodward Street property. Chetcuti defaulted on the loan and Maranghi has not been able to collect because Chetcuti did not record the deed of trust and Magnate Fund #2 LLC, managed by Simonse, made sham loans and recorded deeds of trust on the

2

Woodward Street property before Maranghi could record his deed of trust. Magnate Fund #2 then foreclosed on the property and transferred title to 55 Woodward LLC, another Simonse entity.

Plaintiff Chokatos's allegations are similar. Chokatos says he contributed $500,000 toward a $2.8 million loan to Chetcuti secured by a deed of trust on a Parkridge Drive property. Before Chokatos's deed of trust was recorded, Magnate #2 made a sham loan to Chetcuti secured by a recorded deed of trust. Magnate Fund #2 foreclosed the Parkridge Drive property pursuant to the "scheme and plan" of Chetcuti and Simonse "to leave plaintiff and others with an unsecured loan." Magnate Fund #2 then transferred title to 20 Parkridge LLC, another Simonse entity.

Plaintiffs sued the individuals and entities directly involved in the disputed real estate transactions as well as other entities. At issue here are claims for fraud, declaratory relief, and elder financial abuse (pled by Chokatos alone) against eight defendants that successfully demurred to the complaint: Magnate Fund #1 LLC, Magnate Fund #3 LLC, JWS Capital Management, Inc., LHJS Investments LLC, 27th Street Associates LLC, South Van Ness Street Associates LLC, 55 Woodward LLC, and 20 Parkridge LLC.[1] Plaintiffs allege that each of these entities was formed and controlled by defendant Simonse. We shall hereafter follow the complaints' convention in referring to these eight defendants as the "Simonse Entities."

Plaintiffs allege the Simonse Entities were "participants, aiders and abettors in the wrongful activities alleged herein . . . , and the liability of each arises from the fact that each has engaged in all or part of the improper acts, plans, schemes or transactions, which operate a fraud against plaintiff." They "had actual knowledge of the acts and conduct complained of herein and participated in the furtherance of the fraudulent acts." The Simonse Entities "have participated as members of the conspiracy, or acted in furtherance

---

[1] Most defendants were dismissed from both lawsuits. However, 55 Woodward LLC remains a defendant in Maranghi's suit over the Woodward Street property. Likewise, 20 Parkridge LLC remains a defendant in Chokatos's suit over the Parkridge Drive property.

of it, or aided or assisted in carrying out the fraudulent purposes . . . , and have performed acts and made statements or representation in furtherance of the conspiracy and in so doing aided and abetted the fraudulent conduct" of Chetcuti, Simonse and other defendants.

It is further alleged the Simonse Entities "are being sued as alter egos of defendant Simonse." Plaintiffs allege, on information and belief, that there exists "a unity of interest between defendants Simonse and the Simonse Entities, such that any individuality and separateness between defendant[] Simonse and defendants Simonse Entities have ceased, and each defendant Simonse entity is the alter ego of defendant Simonse, in that the defendants Simonse Entities are not adequately capitalized, or the capitalization was completely illusory; defendant Simonse commingled and used assets of the defendants Simonse Entities for his personal use; and that the defendants Simonse Entities were mere shells, instrumentalities, or conduits through which defendant Simonse carried on his business and affairs." The complaints continue, stating that "Adherence to the fiction of the separate existence of each of the defendants Simonse Entities . . . would sanction fraud and promote injustice" in that Chetcuti has transferred money borrowed from individuals to the Simonse Entities and Simonse has transferred assets to the Simonse Entities. Also, "defendant Simonse can transfer title to the subject property to any one of the defendants Simonse Enterprises at any time to perpetrate the fraud," as he did in transferring title to the properties securing plaintiffs' loans "without any consideration and without regard to any company formalities." Plaintiff Chokatos alleges that the Magnate Fund companies among the Simonse Entities were once lien holders on at least 100 properties and, a year later, were lien holders on only five properties, suggesting that they transferred assets to other entities.

The Simonse Entities demurred to plaintiffs' third amended complaints. The demurrers were sustained without leave to amend. The court found: "Plaintiff has not alleged facts showing that an injustice would result if the separate existence of the moving defendants is respected. Plaintiff has alleged that an injustice might result in the future, but this [is] insufficient to pierce the corporate veil. Moreover, plaintiff seeks

4

reverse piercing, which is not available in California. (*Postal Instant Press, Inc. v. Kasawa Corp.* (2008) 162 Cal.App.4th 1510). Amendment is most unlikely to cure these defects."

## DISCUSSION

On appeal "from a judgment of dismissal following the sustaining of a demurrer without leave to amend, we give the complaint a reasonable interpretation, and treat the demurrer as admitting all material facts properly pleaded." (*Joseph v. Johnson* (2009) 178 Cal.App.4th 1404, 1409.) "The denial of leave to amend is appropriate only when it conclusively appears that there is no possibility of alleging facts under which recovery can be obtained. 'A demurrer should not be sustained without leave to amend if the complaint, liberally construed, can state a cause of action under any theory or if there is a reasonable possibility the defect can be cured by amendment.' " (*Cabral v. Soares* (2007) 157 Cal.App.4th 1234, 1240-1241.)

The central claim here is fraud. "The elements of common law fraud are: '(1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage.' " (*AREI II Cases* (2013) 216 Cal.App.4th 1004, 1021-1022.) It is undisputed that the complaints adequately state causes of action for fraud against Chetcuti, Simonse and the companies that borrowed money from plaintiffs, recorded deeds of trust, received title to disputed properties or otherwise directly participated in allegedly fraudulent transactions. In dispute is the liability of companies allegedly controlled by Simonse, the Simonse Entities. The Simonse Entities argue that the allegations are insufficient to establish their liability for acts of fraud committed by others.

Plaintiffs assert that the Simonse Entities are the alter egos of defendant Simonse and, in the only argument they advance on appeal, seek to impose liability on that basis.[2]

---

[2] Plaintiffs' complaints also contain conspiracy allegations but they make no effort on appeal to assert conspiracy as a basis for liability. We therefore do not reach the issue of whether plaintiffs have alleged, or could sufficiently allege, a basis for imposing liability

Traditionally, the alter ego doctrine is used to establish liability upon an individual for the acts of a corporation and not, as here, to establish liability upon a corporation for the acts of an individual. (*Postal Instance Press, Inc. v. Kasawa Corp., supra*, 162 Cal.App.4th at p. 1513.) "Ordinarily, a corporation is regarded as a legal entity, separate and distinct from its stockholders, officers and directors, with separate and distinct liabilities and obligations. [Citations.] A corporate identity may be disregarded—the 'corporate veil' pierced—where an abuse of the corporate privilege justifies holding the equitable ownership of a corporation liable for the actions of the corporation. [Citation.] Under the alter ego doctrine, then, when the corporate form is used to perpetrate a fraud, circumvent a statute, or accomplish some other wrongful or inequitable purpose, the courts will ignore the corporate entity and deem the corporation's acts to be those of the persons or organizations actually controlling the corporation, in most instances the equitable owners." (*Sonora Diamond Corp. v. Superior Court* (2000) 83 Cal.App.4th 523, 538.)

The Simonse Entities correctly argue that plaintiffs' allegations do not present a traditional use of the alter ego doctrine. Plaintiffs allege that the corporate Simonse Entities "are being sued as alter egos of defendant Simonse," which reverses the usual case of an individual held responsible for the acts of a corporation. A California court has emphatically rejected third party "reverse piercing of the corporate veil, by which the corporate veil is pierced to permit a third party creditor to reach corporate assets to satisfy claims against an individual shareholder." (*Postal Instance Press, Inc. v. Kasawa Corp., supra,* 162 Cal.App.4th at p. 1513.) The court noted that "Traditional piercing of the corporate veil is justified as an equitable remedy when the shareholders have abused the corporate form to evade individual liability, circumvent a statute, or accomplish a wrongful purpose. [Citations.] [¶] The same abuse of the corporate form does not exist when the judgment debtor is the shareholder. In that situation, the corporate form is not

on these entities grounded on a conspiracy theory. Nothing in our opinion should be construed to endorse or to preclude conspiracy allegations in future pleadings. (See *AREI II Cases, supra,* 216 Cal.App.4th at pp. 1021-1025 [setting forth elements of conspiracy to defraud].)

being used to evade a shareholder's personal liability, because the shareholder did not incur the debt through the corporate guise and misuse that guise to escape personal liability for the debt." (*Id.* at p. 1522.)

Plaintiffs' arguments, in large measure, attempt third party reverse piercing of the corporate veil, which is foreclosed by *Postal Instance Press, Inc. v. Kasawa Corp., supra,* 162 Cal.App.4th 1510. The trial court was correct in this regard. But the trial court was incorrect in denying leave to amend because "there is a reasonable possibility an amendment could cure the defect." (*AREI II Cases, supra,* 216 Cal.App.4th at p. 1012.) The cure lies in another variant of vicarious liability known as the single enterprise rule.

"[U]nder the single-enterprise rule, liability can be found between sister companies" or other affiliated companies. (*Las Palmas Associates v. Las Palmas Center Associates* (1991) 235 Cal.App.3d 1220, 1249.) "The theory has been described as follows: ' "In effect what happens is that the court, for sufficient reason, has determined that though there are two or more personalities, there is but one enterprise; and that this enterprise has been so handled that it should respond, as a whole, for the debts of certain component elements of it." ' " (*Id.* at pp. 1249-1250.) The single enterprise rule recognizes that "it would be unjust to permit those who control companies to treat them as a single or unitary enterprise and then assert their corporate separateness in order to commit frauds and other misdeeds with impunity." (*Id.* at p. 1249.)

We reject the Simonse Entities' argument that amendment should not be permitted because alter ego liability under the single enterprise rule is inconsistent with plaintiffs' "theory of their cases at the trial court level." It is true that plaintiffs' allegations focus on corporate liability for Simonse's acts, rather than liability between corporations, and thus the allegations fail to support a single enterprise theory as presently stated. But the allegations are consistent with the single enterprise rule and, in fact, mirror many of the factors used to establish liability upon corporations engaged in a single enterprise. "Factors for the trial court to consider" when assessing alter ego liability under the single enterprise rule "include the commingling of funds and assets of the two entities, identical equitable ownership in the two entities, use of the same offices and employees, disregard

of corporate formalities, identical directors and officers, and use of one as a mere shell or conduit for the affairs of the other." (*Troyk v. Farmers Group, Inc.* (2009) 171 Cal.App.4th 1305, 1342; accord *Greenspan v. LADT LLC* (2010) 191 Cal.App.4th 486, 512-513 [listing factors].) Plaintiffs allege the Simonse Entities "engaged in all or part of the improper acts, plans, schemes or transactions, which operate a fraud against plaintiff"; acted in concert; have "a unity of interest"; "commingled and used assets" are controlled by the same individual (Simonse); lack adequate capitalization; and are "mere shells, instrumentalities, or conduits through which defendant Simonse carried on his business and affairs." The complaints also allege that Magnate Fund #2 LLC, which remains a defendant in the case, transferred property to 55 Woodward LLC in one case, and to 20 Parkridge LLC in the other, without consideration in a concerted effort to defraud plaintiffs. Further, the complaints allege that "Chetcuti himself transferred money borrowed from individuals like [plaintiffs] to the other Simonse Entities directly, like Magnate Fund #3 and LHJS." The allegations suggest the Simonse Entities and other defendants acted as a single enterprise. Amendment of the pleadings will permit plaintiffs an opportunity to develop that claim.

# DISPOSITION

The judgments are reversed. The cases are remanded to the trial court with directions to grant plaintiffs leave to amend their complaints. Plaintiffs shall recover costs incurred on appeal upon timely application in the trial court. (Cal. Rules of Court, rule 8.278.)

_____

Pollak, J.

We concur:

_____

McGuiness, P. J.

_____

Siggins, J.