Filed 5/20/25  Protopappas v. Hindin CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

|  |  |
|---|---|
| TONY PROTOPAPPAS as personal representative, etc., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> ROBERT M. HINDIN, <br><br> Defendant and Respondent. | B338311 <br><br> (Los Angeles County Super. Ct. No. 21STCV19741) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Kevin C. Brazile, Judge.  Affirmed.

Catanzarite Law Corporation and Kenneth J. Catanzarite for Plaintiff and Appellant.

Park Law Firm and Mary M. Park for Defendant and Respondent.

# I. INTRODUCTION

In 2013, Kosmas Pappas obtained a $31,131.37 stipulated judgment (the judgment) against M. Sadegh Namazikhah (Namazikhah); M.S.Namazikhah D.M.D., a dental corporation (N.Corp. 1); and Namazikhah DMD, Inc. (N.Corp. 2).[1]  In 2021, plaintiff filed a first amended complaint against N.Corp. 1, N.Corp. 2, Essential Endodontics, Inc. (EE Corp.), and Robert M. Hindin (defendant) asserting various causes of action based on their alleged improper efforts to thwart enforcement of the judgment.  The trial court granted defendant's motion for summary judgment or, alternatively, summary adjudication (summary judgment motion)[2] as to the single cause of action against defendant—damages for fraudulent transfer.[3]  Plaintiff appeals and we affirm.

---

[1]  Pappas died during the pendency of this action.  His brother, Tony Protopappas, as personal representative of and successor in interest to Pappas's estate was substituted in the action as plaintiff.  References to "plaintiff" include Pappas and Protopappas.

[2]  N.Corp. 1 and EE Corp. separately moved for summary judgment or, alternatively, summary adjudication.  The court denied their motion.  This appeal concerns only the court's ruling on defendant's summary judgment motion.

[3]  The first amended complaint also asserted an accounting cause of action against defendant.  Defendant's respondent's brief asserts plaintiff waived his right to assert the accounting cause of action against defendant when plaintiff elected not to file an amended pleading after the court sustained defendant's demurrer to the first amended complaint with leave to amend.  Defendant

## II.   BACKGROUND

A.   *First Amended Complaint*

On July 19, 2021, plaintiff filed the first amended complaint asserting six causes of action:  (1) to set aside fraudulent transfer of property, (2) damages for fraudulent transfer, (3) declaratory relief, (4) judicial foreclosure, (5) appointment of a receiver, and (6) accounting.

The first amended complaint alleged plaintiff obtained entry of a judgment on May 2, 2013, against Namazikhah, N.Corp. 1, and N.Corp. 2.[4]  The judgment required payment of $24,000 plus $3,631.37 in interest and $3,000 in attorney fees for a total judgment of $31,131.37.[5]  None of these defendants made any payments on the judgment.  Since entry of judgment, $24,904 in additional interest accrued on the judgment, and plaintiff incurred over $60,000 in attorney fees and costs that were recoverable under the judgment.

does not provide adequate record support for this assertion. Because plaintiff does not dispute the assertion and neither party otherwise addresses the accounting cause of action in their briefs on appeal, we accept the assertion as true.

[4]    The first amended complaint alleged there were other defendants who were parties to the stipulated judgment but not relevant to plaintiff's current action.  The only defendants identified in the stipulated judgment plaintiff attached as an exhibit to the first amended complaint, however, are Namazikhah, N.Corp. 1, and N.Corp. 2.

[5]    Based on the numbers the first amended complaint provided, our math shows a total judgment of $30,631.37.

On September 15, 2015, Namazikhah filed a personal Chapter 11 bankruptcy petition. In that proceeding, he listed as personal property N.Corp. 1, which he valued at $28,000.

On July 6, 2017, plaintiff filed with the California Secretary of State a UCC Filing Acknowledgement for the judgment.

On August 15, 2017, plaintiff filed an objection to Namazikhah's Disclosure Statement and Plan in his bankruptcy proceeding stating "the [j]udgment had to be taken into account related to the payments of salary Namazikhah was taking from [N.Corp. 1] given [p]laintiff's lien rights and amount due of $62,000."

On August 31, 2017, Namazikhah filed amended schedules that again listed N.Corp. 1 at a value of $28,000.

On May 18, 2018, Namazikhah filed his First Amended Disclosure Statement and Plan in his bankruptcy proceeding. He stated he expected "'[t]he plan will be funded by the following: . . . (b) employment income ranging between $25,000.00 to $35,000.00 per month; . . .' . . . and provided that such income would be from [N.Corp. 1]." (Emphasis omitted.)

On November 6, 2019, the bankruptcy court denied Namazikhah's Fourth Amended Disclosure Statement and Plan. On December 20, 2019, the court converted Namazikhah's case to a Chapter 7 case and ordered a trustee appointed.

Faced with plaintiff's July 6, 2017, Secretary of State filing and plaintiff's August 15, 2017, opposition to Namazikhah's bankruptcy plan, Namazikhah and defendant, his attorney, "hatch[ed] [a] plan and scheme to transfer [N.Corp. 1's] assets without fair and adequate consideration to [EE Corp.], all in an effort to avoid [p]laintiff's [j]udgment lien." Defendant was aware

of the judgment and plaintiff's efforts to collect the judgment and "advised Namazikhah to pursue [a] fraudulent strategy of a bogus transfer of [N.Corp. 1's] assets to a new corporation that he would form for that purpose."

On September 15, 2017, consistent with the "hatched plan and scheme," defendant formed EE Corp. Also, as part of the plan and scheme, on November 17, 2017, Namazikhah caused to be filed a Chapter 11 bankruptcy petition for N.Corp. 1. The bankruptcy filing listed gross revenue of $486,000 in 2016, which meant N.Corp. 1 had assets and income earning ability that was more than sufficient to pay the judgment in full.

On June 5, 2018, the Chapter 7 trustee for Namazikhah filed a motion to approve the sale of all of N.Corp. 1's assets to EE Corp. for $7,500, and attached an Asset Purchase Agreement signed by Namazikhah for EE Corp. On June 13, 2018, plaintiff filed an opposition to the proposed sale, arguing the sale was for less than fair and adequate consideration and was designed to cheat Namazikhah's creditors, including plaintiff. On June 21, 2018, the Chapter 7 trustee withdrew her motion to approve the sale. The bankruptcy proceeding closed on August 31, 2020.

At a judgment debtor exam on May 21, 2021, Namazikhah, supported by defendant's speaking objections, falsely testified he sold all of N.Corp. 1's assets to EE Corp. for $7,500, a price agreed upon with the Chapter 7 trustee, and was practicing dentistry through EE Corp. "[H]aving failed in an attempt to insulate" the transfer of N.Corp. 1's assets to EE Corp., Namazikhah and defendant "made the transfer anyway without court approval and without fair and adequate consideration by [EE Corp.] to [N.Corp. 1] and transferred the going concern value of the Namizakhah [*sic*] dental practice assets, goodwill,

5

contracts, receivables and work in progress to [EE Corp.] all with the specific purpose [to] hinder, delay and defraud [p]laintiff."

The second cause of action for damages for fraudulent transfer alleged defendant conspired with N.Corp. 1, N.Corp. 2, and EE Corp. to transfer N.Corp. 1's assets to EE Corp. to prevent plaintiff from accessing those assets to satisfy the judgment and to defraud him of his right to collect "monies duly awarded by this Court." The asset transfer resulted from discussions and an agreement between Namazikhah as a shareholder, director, and officer of both N.Corp. 1 and EE Corp. and defendant who was simultaneously counsel for Namazikhah, N.Corp. 1, and EE Corp. The transfer was made in secret without documentation after plaintiff's opposition to the Chapter 7 trustee's motion to sell all of N.Corp. 1's assets caused the trustee to withdraw the motion. Defendant knew about the judgment, plaintiff's effort to collect the judgment, and the attempt to sell N.Corp. 1's assets in the Chapter 7 bankruptcy proceeding. The net fair market value of N.Corp. 1's assets was $400,000.

B.    *Summary Judgment Proceedings*

1.    <u>Defendant's Summary Judgment Arguments and Supporting Evidence</u>

On October 24, 2023, defendant filed his summary judgment motion. He argued, among other things, there was no evidence he participated in a civil conspiracy to transfer fraudulently N.Corp. 1's assets to EE Corp.

In support of his summary judgment motion, defendant submitted, among other evidence, his declaration in which he set forth his legal representation of Namazikhah and his involvement with EE Corp. He declared that in 2012, Namazikhah sold his dental practices to Abraham Ghorbanian. After selling his practices, Namazikhah agreed to work in partnership with Ghorbanian, but the relationship "soured"— Ghorbanian sued Namazikhah for breach of contract and Namazikhah countersued Ghorbanian (together, the Ghorbanian action). Defendant represented Namazikhah in that action.

In the course of his representation in the Ghorbanian action, defendant learned Ghorbanian contacted 2,500 dentists in Southern California by letter (Ghorbanian letter) and falsely disparaged Namazikhah's endodontic practice, damaging Namazikhah's reputation. As a result, Namazikhah lost significant business. At Namazikhah's request, defendant referred him to a bankruptcy attorney.

On September 20, 2015, Namazikhah filed for Chapter 11 bankruptcy. The bankruptcy court appointed defendant as special counsel to handle two personal injury matters and to defend Namazikhah in the Ghorbanian action.

On November 17, 2017, Namazikhah's dental corporation filed for Chapter 7 bankruptcy. In late 2017, Namazikhah asked defendant to form EE Corp. so he could practice endodontics. Namazikhah explained the Ghorbanian letter caused him to lose all of his business and a new business that did not bear his name would allow him to rebuild his practice. Defendant formed EE Corp. for a flat fee of $1,500 plus filing fees.

Namazikhah did not ask defendant to form EE Corp. so he could evade creditors. Namazikhah was already in personal

bankruptcy and had identified plaintiff as a creditor. Namazikhah never asked defendant for advice about asset protection management and defendant never gave him such advice. Defendant did not advise Namazikhah to commit a fraud or hide assets from creditors, including plaintiff, and did not provide Namazikhah a plan to defraud his creditors through "'bogus' transfers." After forming EE Corp., defendant did not provide any legal advice to, represent, or have any contact or involvement with EE Corp.

In mid-2018, defendant was invited to a meeting with Namazikhah and his bankruptcy attorneys. In that meeting, defendant first learned about the failed attempt of EE Corp. to purchase N.Corp. 1's used dental office furniture and equipment for $7,500 in the bankruptcy proceeding. He also then first heard of plaintiff and learned about the judgment lien. Defendant was not involved in the proposed bankruptcy sale of N.Corp. 1's assets.

2. <u>Plaintiff's Argument Opposing Summary Judgment and Supporting Evidence</u>

In opposing defendant's summary judgment motion, plaintiff argued there was evidence from which a jury could infer that defendant had actual knowledge of the formation and operation of a conspiracy to transfer fraudulently N.Corp. 1's assets to EE Corp. for $7,500. He supported his argument with the following claimed evidence:

a. Defendant represented Namazikhah and N.Corp. 1 in the Ghorbanian action in which Ghorbanian valued N.Corp. 1's "going concern business and assets including goodwill" at "over

8

$600,000" giving defendant "actual knowledge as to the value of [N.Corp. 1's] assets which were never conveyed to Ghorbanian in alleged breach of contract."

b.     The court in Namazikhah's personal bankruptcy proceeding appointed defendant as special counsel to represent Namazikhah in the Ghorbanian action, plaintiff was named as a creditor in the bankruptcy proceeding, and defendant was listed on the discharge in that bankruptcy proceeding.

c.     During Namazikhah's personal bankruptcy proceeding "in view of [p]laintiff's [j]udgment and the Ghorbanian[ a]ction claims to [N.Corp. 1's] business and assets for $600,000 as of 2012, [defendant] was paid to from [*sic*] both [N.Corp. 1] ($35,000 in 2016 and $9,000 in 2017) and [EE Corp.] as a general business corporation on September 15, 2017 the purpose for which [defendant] testified Namazikhah told him was due to 'some threats' (i.e. [p]laintiff's [j]udgment, the Ghorbanian[ a]ction, and [p]ersonal [bankruptcy]."

d.     Namazikhah did not amend his personal bankruptcy schedules to name EE Corp. and defendant was aware Namazikhah was going to file for bankruptcy for N.Corp. 1.

e.     Namazikhah testified that as soon as EE Corp. was formed and before N.Corp. 1's bankruptcy was filed, N.Corp. 1 transferred all its assets to EE Corp. including its going concern, patient files, referral list, furniture, insurance, and goodwill.  EE Corp.'s improper receipt of collections was evidenced by tax returns.  Plaintiff's expert valued the transferred assets at over $446,000.

f.     The transfer of N.Corp. 1's assets to EE Corp. prior to N.Corp. 1's bankruptcy left N.Corp. 1 insolvent and led to its bankruptcy.

g.     N.Corp. 1's bankruptcy schedules stated it did not own any accounts receivable, investments, inventory, machinery, intangibles (goodwill), or any other assets when it filed for bankruptcy.

h.     Defendant represented Namazikhah during his May 21, 2021, deposition.[6]

### 3.     The Trial Court's Ruling

The trial court granted defendant's summary judgment motion.  It ruled plaintiff's evidence that defendant represented Namazikhah in the Ghorbanian action, knew N.Corp. 1 would file for bankruptcy, was involved in Namazikhah's personal bankruptcy, and formed EE Corp. was insufficient to create a triable issue of fact concerning the formation of a conspiracy.  No evidence showed defendant knew that any transfer from N.Corp. 1 to EE Corp. would be without adequate consideration and engineered to escape creditors.

## III.   DISCUSSION

Plaintiff contends the trial court erred when it granted defendant's summary judgment motion.  He contends there is a triable issue of material fact concerning whether defendant conspired to transfer fraudulently N.Corp. 1's assets to EE Corp. We disagree.

---

[6]     The evidence plaintiff cites does not support this proposition.  Plaintiff included in this claimed factual basis for denying defendant's summary judgment motion a claim about the applicability of legal authority defendant cited in his motion.

A.    *Standard of Review*

"A trial court properly grants summary judgment where no triable issue of material fact exists and the moving party is entitled to judgment as a matter of law.  (Code Civ. Proc., § 437c, subd. (c).)  We review the trial court's decision [on a summary judgment motion] de novo, considering all of the evidence the parties offered in connection with the motion (except that which the court properly excluded) and the uncontradicted inferences the evidence reasonably supports.  [Citation.]"  (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 476.)
"[I]n moving for summary judgment, a 'defendant . . . has met' his 'burden of showing that a cause of action has no merit if' he 'has shown that one or more elements of the cause of action . . . cannot be established, or that there is a complete defense to that cause of action.  Once the defendant . . . has met that burden, the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto."  (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849.)  "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof."  (*Id.* at p. 850, fn. omitted.)  A party opposing summary judgment "may rely upon inferences, but 'those inferences must be reasonably deducible from the evidence, and not such as are derived from speculation, conjecture, imagination, or guesswork.  [Citation.]'  [Citation.]"  (*Santa Clara Valley Water Dist. v. Century Indemnity Co.* (2023) 89 Cal.App.5th 1016, 1035 (*Santa Clara*); *Sinai Mem'l Chapel v. Dudler* (1991) 231 Cal.App.3d 190,

196–197 (*Sinai Mem'l*) [conclusory assertions or mere possibilities do not raise a triable issue of fact]; *Buehler v. Alpha Beta Co.* (1990) 224 Cal.App.3d 729, 733 (*Buehler*) [an "opposition to summary judgment will be deemed insufficient when it is essentially conclusionary, argumentative or based on conjecture and speculation"].)

B.    *Analysis*

"'Conspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration.' [Citation.]" (*AREI II Cases* (2013) 216 Cal.App.4th 1004, 1021.) To prove a claim for civil conspiracy, a plaintiff must provide "substantial evidence of three elements:  (1) the formation and operation of the conspiracy, (2) wrongful conduct in furtherance of the conspiracy, and (3) damages arising from the wrongful conduct." (*Kidron v. Movie Acquisition Corp.* (1995) 40 Cal.App.4th 1571, 1581.)

"It is well settled that "'[b]are" allegations and "rank" conjecture do not suffice for a civil conspiracy.' [Citation.]  A party seeking to establish a civil conspiracy 'must show that each member of the conspiracy acted in concert and came to a mutual understanding to accomplish a common and unlawful plan, and that one or more of them committed an overt act to further it. [Citation.]  It is not enough that the [conspirators] knew of an intended wrongful act, they had to agree—expressly or tacitly—to achieve it.' [Citation.]  It must be recognized, however, that because of the very nature of a conspiracy, 'its existence must

12

often be inferentially and circumstantially derived from the character of the acts done, the relations of the parties and other facts and circumstances suggestive of concerted action.' [Citation.]" (*AREI II Cases, supra*, 216 Cal.App.4th at p. 1022.)

In support of his summary judgment motion, defendant presented evidence that showed in late 2017 Namazikhah asked him to form EE Corp. so Namazikhah could practice endodontics. Namazikhah told defendant he needed a new corporation that did not bear his name because the Ghorbanian letter damaged his reputation and caused him to lose all of his business. Namazikhah did not ask defendant to form EE Corp. so he could evade creditors and defendant did not advise Namazikhah to commit a fraud or hide assets from creditors. After forming EE Corp., defendant did not provide it with any legal advice, represent it, or have any contact or involvement with it.

In rebuttal, plaintiff presented evidence that showed defendant represented Namazikhah and N.Corp. 1 in the Ghorbanian action in which Ghorbanian claimed N.Corp. 1 improperly retained assets worth $600,00 from his purchase of Namazikhah's his dental practices; defendant formed EE Corp.; as soon as EE Corp. was formed and before N.Corp. 1 filed for bankruptcy, N.Corp. 1 transferred all its assets to EE Corp.; defendant was involved in Namazikhah's personal bankruptcy; plaintiff's expert valued N.Corp. 1's assets at $446,000; and N.Corp. 1 it sold its assets to EE Corp. for $7,500.

Plaintiff's evidence may have been sufficient to create a triable issue of fact about whether the assets N.Corp. 1 transferred to EE Corp. were worth more than $7,500. It was not, however, sufficient to create a triable issue of fact about whether defendant conspired to transfer fraudulently those

13

assets to prevent plaintiff from satisfying the judgment. Plaintiff presented no evidence from which reasonable inferences could be drawn that defendant was involved in or even knew of the asset transfer. Accordingly, plaintiff's argument that defendant conspired to fraudulently transfer N.Corp. 1's assets to EE Corp. is speculation and conjecture insufficient to defeat summary judgment. (*Santa Clara, supra*, 89 Cal.App.5th at p. 1035; *Sinai Mem'l, supra*, 231 Cal.App.3d at pp. 196–197; *Buehler, supra*, 224 Cal.App.3d at p. 733.)

## IV.   DISPOSITION

The judgment is affirmed.  Defendant is entitled to his costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

KIM (D.), J.

We concur:

MOOR, Acting P. J.

WILLIAMS, J.[*]

---

[*]     Judge of the Santa Clara County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.