Filed 3/24/20

# CERTIFIED FOR PUBLICATION

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

### DIVISION FIVE

| | |
|---|---|
| COREY SPENCER et al., | B295738 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. BC629596) |
| v. | |
| CHARLIE MOWAT et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Carolyn Kuhl, Judge. Affirmed.

Jeff Lewis Law, Jeffrey Lewis and Sean C. Rotstan for Defendant and Appellant Michael Thiel.

Beffa Law and Darin T. Beffa for Defendant and Appellant Charlie Mowat.

Hanson Bridgett, Gary A. Watt, Lisa M. Pooley, Kimon Manolius, Kurt A. Franklin, Samatha D. Wolff, Josephine M. Petrick and David C. Casarrubias; Otten Law and Victor Otten for Plaintiffs and Respondents Corey Spencer, Diana Milena Smoluchowska-Miernik and Coastal Protection Rangers, Inc.

———————————————

Lunada Bay is a premier surf spot, located in Palos Verdes Estates. The Lunada Bay Boys are alleged to be a group of young and middle-aged men, local to Palos Verdes Estates, who consider themselves to be the self-appointed guardians of Lunada Bay. One of their tenets is to keep outsiders away from the surf location through threats and violence. Plaintiffs are non-locals who have tried to surf Lunada Bay, but encountered harassment by the Bay Boys. They brought suit against the Bay Boys and more than a dozen of its individual members. Two of those members filed motions to dismiss under the anti-SLAPP law (Code Civ. Proc., § 425.16), arguing that the allegations against them were based on protected speech and petitioning activity. The trial court denied the motions, concluding that the allegations against the moving defendants were actually based on a conspiracy to commit assault and other torts. Those defendants appeal, and we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

### 1. Allegations of the Complaint

The operative complaint is the first amended complaint. The plaintiffs are two surfers, Corey Spencer and Diana Milena Smoluchowska-Miernik, and Coastal Protection Rangers, a non-profit dedicated to protecting California's beaches and ensuring they are safe and accessible to all visitors.

The defendants are the Lunada Bay Boys, a number of its individual members, including appellants Michael Thiel and Charlie Mowat, and the City of Palos Verdes Estates. Thiel and Mowat are the only defendants who are appellants in this appeal. Our discussion of the complaint's factual allegations will therefore focus on their conduct, although some understanding of the general allegations is necessary.

2

A. *General Allegations Against the Members of the Bay Boys*

Broadly speaking, plaintiffs allege that the Lunada Bay Boys, sometimes with the tacit approval of City officials who did nothing to stop them, engaged in what is known as "localism" – a practice of keeping outsiders away from the surf site through threats and violence.[1]  The complaint alleges that the Bay Boys have "blocked public access to the beaches of Palos Verdes Estates, Lunada Bay in particular, for over 40 years.  In what is a multi-generational practice of extreme 'localism,' and using rules established by the 'older boys,' the Bay Boys use physical violence, threats of bodily harm, vandalism to visitor[s'] vehicles, verbal harassment and other intimidation to enforce their unwritten rule:  'If you don't live here, you don't surf here.'  Indeed, members of the Bay Boys believe it is 'disrespectful' for outsiders to visit, use or even photograph 'their' beach."

The Bay Boys, specifically including Mowat, were alleged to have built and maintained an unpermitted masonry rock and wood fort seating area, known as "Rock Fort," near the beach.  "The steep switch-backed trails that lack proper improvements act as perfect pinch points, which the Lunada Bay Boys use to block access to the shoreline.  From the Rock Fort and the bluffs above, the Individual Members of the Lunada Bay Boys

---

[1]     The complaint alleges more than just tacit approval on the part on the City; it alleges that the City used its discretion to enforce municipal laws in a manner that discriminates against outsiders, and ignored requests of the California Coastal Commission to make Lunada Bay more accessible to the public.  As we are only concerned with the anti-SLAPP motions of Thiel and Mowat, we do not further discuss the allegations against the City.

orchestrate illegal activity that is intended to keep the public away.  Some of the more egregious tactics include:  (1) physically obstructing outsiders' access to the beach trails; (2) throwing rocks; (3) running people over with surfboards in the water; (4) punching outsiders; (5) stealing outsiders' wallets, wetsuits and surfboards; (6) vandalizing vehicles and personal property, including slashing tires and waxing pejorative slurs onto vehicle windows; (7) levying threats against outsiders; and (8) intimidating outsiders with verbal insults, gestures, and threats of serious injury."

Due, in part, to the local police's claimed unwillingness to pursue complaints against the Bay Boys, the individual plaintiffs and other would-be surfers who allegedly were harassed by the Bay Boys were often unable to identify the specific individuals who harassed them.  As a result, certain allegations of the complaint simply name the "Individual Defendants," a designation which includes Thiel and Mowat.  For example, the complaint alleges that, "Individual Defendants intimidate visiting beachgoers with threats and taunts, by taking photos and video of beachgoers, and by congregating near the entrances to both [trails to the beach]."  The complaint also alleges a conspiracy amongst the Bay Boys:  "For many years, The Bay Boys have conspired to commit wrongful acts for the purpose of keeping outsiders from coming to Lunada Bay.  The agreements between the individual members of the Bay Boys are made orally, in writing, and are implied by the conduct of the parties."

The causes of action alleged against the Bay Boys and its individual members (including Mowat and Thiel) include public nuisance, assault and battery.[2]

B.     *Specific Allegations Against Appellants*

The allegations against Mowat and Thiel are that, as members of the Bay Boys and "Individual Defendants," they participated in the conspiracy.  However, thanks to discovery in a related federal action, plaintiffs obtained records of some text messages among Bay Boys, and, based on those messages, made some specific allegations regarding participation in the conspiracy.[3]  Some of those allegations specifically related to Mowat and Thiel.

---

[2]     As we shall discuss, civil conspiracy is not itself a tort, but a theory which " 'fastens liability on those who agree to the plan to commit the wrong as well as those who actually carry it out.' [Citation.]"  (*Stueve Bros. Farms, LLC v. Berger Kahn* (2013) 222 Cal.App.4th 303, 323.)  The Bay Boys, including Mowat and Thiel, are alleged to be liable in conspiracy for nuisance, assault, and battery, as well as violations of the California Coastal Act (Pub. Resources Code, §§ 30000 et seq.) and the Bane Act (Civ. Code, § 52.1).  The parties do not address the merits of the statutory causes of action further, nor do we.

[3]     The same plaintiffs had filed a federal class action against the Bay Boys and the City.  The district court granted summary judgment to the City on the federal claims and declined to assert supplemental jurisdiction on the state law claims.  The plaintiffs appealed the district court judgment, an appeal that is apparently still pending.  Plaintiffs, meanwhile, filed the current action in state court.

### (1) January 20, 2014 Harassment of Christopher Taloa – Mowat Involvement

On January 20, 2014, Martin Luther King Day, a surfer named Christopher Taloa planned a peaceful event to bring multiple non-local surfers to Lunada Bay to open the bay for everyone.  The Lunada Bay Boys learned about Taloa's plans, and coordinated through text messages to harass Taloa and his fellow surfers.  Mowat was part of the group, texting, "I will be on the patio allllllllllll day on Monday throwing out heckles and sporting a BBQ.  I'm already warming up."  Mowat texted another to say, "[h]ope you're off Monday for the fiasco.  I'm going to sponsor a BBQ and be on the patio all day."  When Taloa went into Lunada Bay to surf, he was surrounded by Bay Boys who kicked him, taunted him, splashed water in his face, and harassed him.  One man, wearing blackface and sporting an afro wig told him, "You don't pay enough taxes to be here."

### (2) January 29, 2016 Harassment of Plaintiff Spencer – Mowat Involvement

Two years later, on January 29, 2016, Mowat was involved in another act of harassment.  That day, when plaintiff Spencer was spotted at Lunada Bay, several individuals, including Mowat, exchanged text messages to bring a crowd of Bay Boys to the bay.  Specifically, one of the Bay Boys texted, "The kook is here at the bay right now," and Mowat responded, "On my way!!!!"  Once there, Mowat texted, "He's in the water.  Only five guys out.  Get down here boys.  I'm out there."

Spencer was told by the Bay Bays, "You can't surf here, kook."  When Spencer was in the water, one of the Bay Boys intentionally ran over Spencer with his surfboard, slicing his hand open.

That same day, plaintiff Miernik also went to surf Lunada Bay. She was threatened by Bay Boy David Melo, who screamed at her that she would get hurt if she stayed. This was overheard by a City police officer, who briefly detained Melo.

(3)     February 5, 2016 Further Harassment of Taloa, Spencer and Miernik – Mowat and Thiel Involvement

On February 5, 2016, Taloa, Spencer and Miernik returned to Lunada Bay with some friends. Mowat texted three other Bay Boys, including Thiel, "Surf looks like it could get epic today. There's five kooks standing on top of the trail with their own personal photographer taking pictures of them posing. I thinks it's the same Taloa crew. This could get ugly today. We all need to surf." Mowat followed up, confirming, "It's definitely Taloa." One of the Bay Boys whom Mowat had messaged responded to the scene. He circled the non-local group with a video camera, following Taloa along the bluffs, while others called Spencer names.

A few hours later, Mowat wrote the others, again including Thiel, stating, "Too bad this bitch that called the cops on [David Melo] is such a cunt. She sure has a great rack and ass!" Thiel replied, "Fuck . . . she's still down there???!" Mowat said, "No, they are all gone. Ghost town Lunada. Just had an epic sess with just Sandoval out." Thiel said, "Saw u get a couple good ones! Good crew down now – Leo, Clyde, Gabron, Chad. . . ." Mowat said, "Yep, business as usual. That patio is in good form." Thiel ended the exchange with, "Right on . . . ."

7

> **(4)** <u>The February 13, 2016 Aborted Police Sting and Harassment of Miernik – Thiel Involvement</u>

From time to time, Lunada Bay and its reputation for localism made the news. In December 2015, the City Police Chief was quoted in the Los Angeles Times as intending to add patrols to the coast and make the first arrest in years of one of the assailants. The Bay Boys were, unsurprisingly, not happy with the idea of increased enforcement. In February 2016, Thiel coordinated a letter-writing campaign to the City, telling the others to write calmly and rationally to express their outrage at the chief's behavior.

Evidence submitted in connection with the anti-SLAPP motion would later reveal that in January 2016, at a meeting with other local police chiefs, it was agreed that police officers from other departments would help the City in a sting operation, which was planned for February 13, 2016. Plaintiffs' complaint alleged that, the day before the planned sting, Thiel met with the City Manager to discuss his complaints regarding policing. Thiel told the City Manager that he was aware an undercover operation was scheduled at Lunada Bay for the following day, and stated that they better not be doing it then. The City Manager called the Police Chief, who cancelled the undercover operation.

On February 13, 2016, the date previously set for the now-cancelled sting operation, there was no enforcement at all at Lunada Bay. That day, plaintiff Miernik returned to the bay with a friend. Bay Boys called her a bitch and a liar. One of them shook up a beer and sprayed it on her. Others filmed her; she asked them to stop, but they replied that she was sexy and excited them. One said she made him "excited" and "hard,"

8

which makes it easier to get into his wetsuit; he then changed into his wetsuit, exposing himself to her.

**2.	*The Anti-SLAPP Motions***

An anti-SLAPP motion presents a means by which a defendant, sued for conduct in furtherance of the constitutional right of petition or free speech, can require a plaintiff to establish that there is a probability of prevailing on the claim or face early dismissal of the action.  If the defendant first establishes a prima facie showing that a claim is based on so-called "protected activity," the burden switches to the plaintiff to establish the lawsuit has at least minimal merit.  (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1061 (*Park*).)

Thiel and Mowat each filed anti-SLAPP motions, as did another defendant, Paul Hugoboom.  Hugoboom's motion is not part of the record on appeal; it would become relevant, however, because Mowat's motion contained no independent argument, but simply joined Thiel's and Hugoboom's motions.  Mowat's motion was a joinder in Thiel's and Hugoboom's, and Mowat has chosen not to include Hugoboom's motion as part of the record on appeal.  Thus, Mowat's legal position on appeal is restricted by the arguments raised by Thiel in the trial court.[4]

A.	*Thiel's Supporting Declaration*

In Thiel's motion, he argued that the complaint against him was based on protected activity because it was founded on his letter writing campaign and his conversation with the City Manager – acts in furtherance of his constitutional right to petition.  He supported the motion with his declaration, which explained that he is "10-40 years older" than most of the other

---

[4]	Mowat's opening and reply briefs on appeal first adopt the "entirety of" Thiel's briefs and then make additional legal points.

9

individual defendants and has "very little awareness of what goes on in their lives beyond seeing them occasionally at Lunada Bay or other local beaches." He explained that he had been "increasingly concerned by the actions of some of the people visiting Lunada Bay. In addition to the plaintiffs in this matter, who seemed completely focused on generating publicity for themselves at the community's expense, the neighborhood was also being visited by individuals doing such things as photographing people and license plates and screaming obscenities at anyone they thought might be a 'bay boy.' All the while, the then-police chief seemed more interested in arresting a 'bay boy' than in keeping the peace. It seemed to me that the then-police chief had declared war on the community for his own gain in the form of positive press coverage. Based on my concerns, I wrote a letter to my elected officials and encouraged others to do the same." Similarly, Thiel explained that he met with the City Manager to discuss his belief that the City was misusing local resources in going after the local surfing community. He specifically denied having known about the planned police sting and disputed talking to the City Manager about it.

As to his participation in the group text messages, Thiel stated that he was not part of any coordinated campaign to harass Miernik and others; he simply believed that they were trying to manufacture incidents for their own gain and he expressed his relief when he learned they had left Lunada Bay.

B. *Mowat's Joinder*

Mowat joined Thiel's motion, explaining that he, too, is being sued for communicating with the City Manager and other residents on a matter of public controversy. He filed no evidence in support of his motion.

10

### 3.    *Plaintiffs' Opposition*

In their opposition to Thiel's motion, plaintiffs argued in no uncertain terms that their complaint was based on acts of harassment and threats of violence, not the petitioning activity highlighted in Thiel's motion.  They explained, "Thiel is not a Defendant because he talked to the City Manager or told his gang of friends to write letters.  To the contrary, he conspired to harass, assault, batter, and intimidate visitors to the beach; this is the gravamen of Plaintiffs' complaint."  According to plaintiffs, the petitioning activity was simply evidence of the underlying conspiracy.  Plaintiffs believed that Thiel manipulated the City Manager into calling off the sting so that the Bay Boys would be free to harass beachgoers the next day – as they did, including the sexual harassment of plaintiff Miernik – but the principal thrust of the complaint was the actual harassment.

In opposing Mowat's motion, plaintiffs emphasized that Mowat failed to identify allegations of his own protected activity as the basis for his motion.

Plaintiffs supported their opposition with numerous declarations from surfers who had been harassed and attacked by the Bay Boys over the years, as well as police reports and newspaper stories documenting the Bay Boys' campaign of localism.[5]

---

[5]    The declarations had been filed in support of class certification in the related federal case.  Neither Mowat nor Thiel objected to these declarations.  One was from Michael Sisson, an attorney who, in 1995, brought suit on behalf of a surfer who had been attacked by the Bay Boys, sought a gang injunction against them, and sued the City for Civil Rights violations.

11

## 4. *Replies*

In reply, Thiel argued that the gravamen of the complaint against him could not be harassment and threats of violence, because plaintiffs presented no evidence that he did any of those acts. Thus, he maintained, he was simply being sued for his petitioning activity to the City Manager.

In Mowat's reply, he, for the first time, addressed the individual allegations against him in the complaint, and argued that they were all based on protected activity.[6] As to his statements in the text messages apparently attempting to gather the Bay Boys whenever non-locals were spotted at Lunada Bay, Mowat argued that he was simply "planning to assemble with other Defendants to counter-protest staged surfing protests." Mowat submitted no declaration or other evidence supporting this interpretation of his text messages.

## 5. *Hearing on Anti-SLAPP Motions*

At the hearing, Thiel's counsel again argued that the only evidence against Thiel was that he met with the City Manager and organized a letter-writing campaign. Plaintiffs' counsel again repeated that the gravamen of the complaint is a conspiracy to intimidate and harass, not Thiel's communications with the City Manager or letter-writing campaign. Counsel explained, "[W]e are not going after Mr. Thiel because he met with the City Manager. That's merely underlying evidence of this overall conspiracy."

In response to Mowat's argument that he had simply been arranging a counterprotest, plaintiffs' counsel responded that the allegations are that Mowat was not arranging a counterprotest

---

[6] As for his involvement in building the rock fort, he stated it, "does not negate the core allegations of protected activity and should be ignored."

12

but planning to intimidate non-locals with the other Bay Boys – which, in some instances, led to the targeting of plaintiffs.

The trial court took the matter under submission.

## 6.    *Ruling and Appeal*

The court's order on the anti-SLAPP motion was part of a minute order that included rulings on multiple submitted matters.  One of those matters was a demurrer for uncertainty – which had been pursued by a number of defendants including Mowat, but not Thiel.  The court sustained the demurrer with leave to amend to require plaintiffs to plead which defendant committed which alleged underlying violation or tortious act upon which conspiracy liability is sought to be based.  In the course of its discussion sustaining the demurrer with leave, the court explained, "In the [operative complaint], Plaintiffs allege that each of the Individual Defendants engaged in a conspiracy dedicated to keeping the public away from Lunada Bay.  As such, the allegations that certain of the Individual Defendants committed torts or other violations of California law within the ambit of the alleged civil conspiracy may be sufficient to subject all of the Individual Defendants to liability for such tortious conduct.  [Citation.]"

The court then denied the anti-SLAPP motions.  As to Thiel, the court concluded he was not being sued for his communications with the City, but for being an active part in a conspiracy to violate California law and commit tortious acts. The court noted that Thiel was part of a group which coordinated the February 5, 2016, harassment of plaintiff Spencer by text message, and those texts are related to the alleged unlawful conspiracy to prevent non-local surfers from using Lunada Bay. "If found to be a conspirator, Thiel could be liable for the wrongful and unlawful acts of his co-conspirators.  Thus, the

13

communications with the City concerning Lunada Bay are not the activity which gives rise to Thiel's liability. As Plaintiffs correctly note, the communications with the City Manager merely serve to evidence the underlying conspiracy to illegally exclude others from Lunada Bay through threats and violence." Mowat's joinder in the anti-SLAPP motions was denied for similar reasons.

Thiel and Mowat filed timely notices of appeal.

## DISCUSSION

### 1. *Law Governing Anti-SLAPP Motions and Standard of Review*

"Anti-SLAPP motions are evaluated through a two-step process. Initially, the moving defendant bears the burden of establishing that the challenged allegations or claims 'aris[e] from' protected activity in which the defendant has engaged. [Citations.] If the defendant carries its burden, the plaintiff must then demonstrate its claims have at least 'minimal merit.' [Citations.]" (*Park, supra,* 2 Cal.5th at p. 1061.)

Before a court can proceed to the second prong, the moving defendant must satisfy the first prong – that is, establish that the cause of action arose from protected activity, as the term is defined in the anti-SLAPP statute. Subdivision (e) is the operative provision and describes four categories of protected speech and conduct: "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public

14

interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or issue of public interest." (Code Civ. Proc., § 425.16, subds. (e)(1)-(e)(4).)

"We review de novo the grant or denial of an anti-SLAPP motion. [Citation.] We exercise independent judgment in determining whether, based on our own review of the record, the challenged claims arise from protected activity. [Citations.] In addition to the pleadings, we may consider affidavits concerning the facts upon which liability is based. [Citations.] We do not, however, weigh the evidence, but accept plaintiff's submissions as true and consider only whether any contrary evidence from the defendant establishes its entitlement to prevail as a matter of law. [Citation.]" (*Park, supra,* 2 Cal.5th at p. 1067.)

2.      ***Thiel And Mowat Failed to Establish the First Prong – That the Causes of Action Arise From Protected Activity***

"A claim arises from protected activity when that activity underlies or forms the basis for the claim. [Citation.] Critically, 'the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech.' [Citations.]" (*Park, supra,* 2 Cal.5th at pp. 1062-1063.) "To determine whether a claim arises from protected activity, courts must 'consider the elements of the challenged claim and what actions by the defendant supply those elements and consequently form the basis for liability.' [Citation.] Courts then must evaluate whether the defendant has shown any of these actions fall within one or more of the four categories of ' "act[s]" ' protected by the anti-SLAPP statute. [Citations.]" (*Wilson v. Cable News Network, Inc.* (2019) 7 Cal.5th 871, 884.)

15

Here, the causes of action against Thiel and Mowat are pursued on a theory of conspiracy – conspiracy being a doctrine of liability and not a cause of action itself. (*AREI II Cases* (2013) 216 Cal.App.4th 1004, 1021.) "To establish conspiracy, a plaintiff must allege that the defendant had knowledge of and agreed to both the objective and the course of action that resulted in the injury, that there was a wrongful act committed pursuant to that agreement, and that there was resulting damage. [Citation.] A conspiracy requires evidence that each member of the conspiracy acted in concert and came to a mutual understanding to accomplish a common and unlawful plan, and that one or more of them committed an overt act to further it.' [Citation.] Thus, conspiracy provides a remedial measure for affixing liability to all who have 'agreed to a common design to commit a wrong' when damage to the plaintiff results. [Citation.]" (*IIG Wireless, Inc. v. Yi* (2018) 22 Cal.App.5th 630, 652.) "A participant in the conspiracy 'effectively adopts as his or her own the torts of other coconspirators within the ambit of the conspiracy.' [Citation.]" (*Navarrete v. Meyer* (2015) 237 Cal.App.4th 1276, 1291.) The doctrine is one of vicarious liability; each member of the conspiracy becomes liable for all acts done by others pursuant to the conspiracy. (*Ibid.*)

The elements of liability under conspiracy are: (1) formation and operation of the conspiracy; (2) wrongful conduct in furtherance of the conspiracy; and (3) damages arising from the wrongful conduct. (*AREI II Cases, supra,* 216 Cal.App.4th at pp. 1021-1022.) The plaintiff must establish that the conspiring defendants knew of the wrongful plan, and agreed, expressly or tacitly, to achieve it. (*Id.* at p. 1022.) Due to the secret nature of conspiracies, their existence is often inferentially and circumstantially derived from the character of

16

the acts done, the relations of the parties, and other facts and circumstances suggestive of concerted action.  (*Ibid.*)

In this case, plaintiffs sued Thiel and Mowat for public nuisance, assault and battery—not necessarily for any acts of nuisance, assault or battery which they personally may have committed, but for acts committed by other Bay Boys with whom Thiel and Mowat had allegedly conspired.  The question presented to us is:  When a tort cause of action is asserted on a conspiracy theory, which of the defendant's alleged "acts" are considered for the purposes of the first prong anti-SLAPP analysis – the acts which constitute the tort itself, or the acts which evidence the defendant's participation in the conspiracy?  Thiel's and Mowat's anti-SLAPP motions are based on the assumption that only the latter acts are considered.  We disagree; it is the tort itself that controls, not individual acts that demonstrate the existence of a conspiracy.

Indeed, this conclusion is compelled by *Park*, which holds "a claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted." (*Park, supra,* 2 Cal.5th at p. 1060.)  When liability is asserted for the target act of a conspiracy, the preliminary speech or petitioning activity is simply evidence of the defendant's liability, not "the wrong complained of."[7]

---

[7]     Thiel argues that *Park* should be read differently. However, he supports his analysis by taking language from that opinion out of context.  In *Park*, the plaintiff alleged he was wrongfully denied university tenure for discriminatory reasons. The university filed an anti-SLAPP motion arguing that the lawsuit was based on numerous communications that led up to, and followed, the decision to deny him tenure, and that those

17

*Richmond Compassionate Care Collective v. 7 Stars Holistic Foundation, Inc.* (2019) 32 Cal.App.5th 458 (*Richmond*) is illustrative. In that case, the plaintiff received a permit to open a dispensary in the City of Richmond but was unable to obtain real property on which to locate its dispensary. It brought suit against competing dispensaries and their owners, alleging a conspiracy to prevent plaintiff from obtaining any location for its dispensary. Plaintiff alleged that the conspiracy involved presenting phony real estate deals to lenders to tie up their property, falsely telling property owners that their land would be subject to federal forfeiture if they leased to plaintiff, and threatening property owners to notify their lenders if they leased to a dispensary. (*Id*. at p. 462.) Defendants brought an anti-SLAPP motion, arguing that they were being sued for the

---

communications were protected activity. (*Park, supra,* 2 Cal.5th at p. 1061.) The Supreme Court disagreed, concluding that Park's suit was based on the allegedly discriminatory denial of tenure, not the communications. (*Id*. at pp. 1067-1068.) In the course of its discussion, the court recognized prior authority which held that claims against an employee acting as a grievance officer for how she conducted the grievance hearing arose from protected activity. (*Id*. at p. 1070.) The *Park* court cited this conclusion favorably, noting that to deny protection would chill employees from participating in the hearing process. (*Id*. at pp. 1070-1071.) The *Park* court added, "[l]ikewise, to deny protection to individuals weighing in on a public entity's decision might chill participation from a range of voices desirous of offering input on a matter of public importance." (*Id*. at p. 1071.) But this language is of no assistance to Thiel, because it is not his offering of input on a matter of public importance that is the gravamen of the complaint against him. The gravamen is his conspiring with other Bay Boys to harass, assault and batter outside visitors to Lunada Bay.

18

protected conduct of joining a political group to influence local ordinances.[8] (*Id*. at pp. 464-465.) The Court of Appeal disagreed, concluding the essence of the complaint, "was the private actions the group took to restrain trade and monopolize the medical marijuana market in Richmond. That was the gravamen, the thrust, of the cause of action. Whatever the protected activity, it was at the most incidental. [Citations.]" (*Id*. at p. 470.)

To the same result is *Novartis Vaccines & Diagnostics, Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.* (2006) 143 Cal.App.4th 1284 (*Novartis*). In that case, defendant opposed animal testing performed at a lab used by plaintiff to test some of its products. Defendant targeted certain of plaintiff's employees for "home visits," which were, "terrifying incidents in which persons broke employees' windows, vandalized their cars, set off ear-piercing alarms in their yards, and left excrement on their doorsteps, as well as other tactics, including publication of employees' personal information on the internet and that of employees' spouses and children." (*Id*. at p. 1288.) When plaintiff sued, defendant filed an anti-SLAPP motion. To be sure, the only conduct defendant itself was alleged to have committed was posting the employees' personal information on the internet; plaintiffs pursued a theory that the defendant had ratified, authorized, aided and/or abetted the unlawful home visits. (*Id*. at pp. 1291-1292.) The trial court denied the anti-SLAPP motion, concluding that the gravamen of the complaint was that defendant was liable with its "coconspirators" for the home visits.

---

[8] At the trial court hearing, defense counsel had argued, "But what is actually in that complaint, though the basis for saying that his – my client is liable is the joining of a group, a political group." (*Id*. at p. 465.)

19

(*Id*. at pp. 1295, fn. 2.)  On appeal, the defendant again argued the complaint was directed to its speech in connection with a public issue.  The plaintiff responded that the gravamen was not speech, but the acts of harassment, intentional infliction of emotional distress, intrusion and trespass occurring during the "home visits" by unnamed individuals, for which defendant was responsible under a conspiracy theory.  (*Id*. at p. 1296.)  The court agreed with plaintiffs.[9]  (*Ibid.*)

---

[9]  The court also held that the "home visit" conduct was not protected under the anti-SLAPP law because it was conclusively established to be illegal as a matter of law, a point which the defendant conceded.  (*Novartis, supra,* 143 Cal.App.4th at p. 1296.)  The court went on to hold that statements in furtherance of a conspiracy are also unprotected under the anti-SLAPP law.  (*Id*. at p. 1297.)  Thiel attempts to distinguish *Novartis* on the basis that, unlike the defendant in *Novartis*, he did not concede that his conduct was illegal.  But, again, Thiel is focusing on the wrong conduct – he argues that his letter writing campaign and discussion with the City Manager were not illegal.  The focus is not on Thiel's conduct, but the alleged torts he is accused of conspiring with his fellow Bay Boys to commit.  At oral argument on appeal, Thiel's counsel conceded that the assaults and batteries the Bay Boys were alleged to have committed were illegal, but argued that *Novartis* is distinguishable because in that case, the defendant conceded the illegality of *both* the home visits and the publication of the employees' names on the internet – the alleged protect speech.  We disagree with this characterization of *Novartis*.  The *Novartis* court explained, "Here, the evidence conclusively establishes that the activities described at length in the complaint, and about which there is no dispute, are illegal as a matter of law.  Indeed, [defendant] has conceded that the attacks on [plaintiff's] employees were unlawful.  [¶]  Moreover, there is ample evidence that [defendant] conspired with the demonstrators to commit these wrongful acts."  (*Id*. at p. 1296.)  The court went on to find that defendant's

20

Independent research has disclosed one case that might be considered at odds with *Richmond* and *Novartis*. In *Contreras v. Dowling* (2016) 5 Cal.App.5th 394, a tenant sued her landlord for illegal entries into her apartment, and also sued the landlord's counsel for allegedly conspiring with the landlord to commit the illegal entries. The landlord's counsel pursued an anti-SLAPP motion on the basis that the only conduct he allegedly committed was the protected conduct of advising his clients in the course of pending or threatened litigation. The *Contreras* court concluded his anti-SLAPP motion should have been granted, agreeing that the focus should be on the attorney's conduct, not the illegal entry that was the alleged object of the conspiracy. (*Id*. at pp. 399, 409-410.) *Contreras* is distinguishable, both because it involved the factual scenario of an attorney allegedly acting in concert with his clients, and because the appellate court concluded the plaintiff's allegations of conspiracy were conclusory and alleged nothing beyond the provision of routine legal services. (*Id*. at p. 413.) Ignoring the defective conspiracy allegations, the court analyzed separately the respective acts of the landlord and attorney. It found the only acts alleged against counsel were in advising his client, protected activity.

We believe *Richmond* and *Novartis* control here. In determining the acts on which the causes of action against Thiel and Mowat are based, we focus on the tortious acts in which they are alleged to have conspired – the harassment of non-locals, the trail-obstructing, the rock-throwing, the running over with

---

statements in furtherance of the conspiracy were not the sort of speech the anti-SLAPP statute was designed to protect. (*Id*. at p. 1297.) In other words, the conceded illegality of the target acts of the conspiracy rendered the speech in furtherance of the conspiracy unprotected.

surfboards, the punching, the theft, the vandalism, the sexual harassment, the threats, and the intimidation.  None of this is protected speech or petitioning activity.  That Thiel may have also engaged in petitioning activity with the goal of assisting the Bay Boys does not mean the complaint against him arises from that activity.  The conclusion is even stronger with respect to Mowat, whose conduct, as alleged in the complaint, includes text messages which appear to have solicited the assistance of fellow Bay Boys in harassment.  As such, the anti-SLAPP motion was properly denied on the first prong.

## DISPOSITION

The denial of the anti-SLAPP motions is affirmed.  Thiel and Mowat shall pay plaintiffs' costs on appeal.  Plaintiffs' request for sanctions for pursuit of a frivolous appeal is denied.

RUBIN, P. J.

WE CONCUR:

MOOR, J.

KIM, J.

22